MARK BRNOVICH
ATTORNEY GENERAL
(FIRM STATE BAR NO. 14000)

KATHRYN A. DAMSTRA
ASSISTANT ATTORNEY GENERAL
CRIMINAL APPEALS SECTION
400 WEST CONGRESS, BLDG. S–215
TUCSON, ARIZONA 85701–1367
TELEPHONE: (520) 628–6520
Kathryn.Damstra@azag.gov
E-mail: CADocket@azag.gov
(State Bar Number 14384)

ATTORNEYS FOR RESPONDENTS

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Earl Felton Crago,<br>Petitioner,<br><br>-vs-<br><br>David Shinn, et al.,<br>Respondents. | CV 22-00339-TUC-JAS (LAB)<br><br>**LIMITED ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS** |

In 1995, a jury found Petitioner Earl Crago guilty of first-degree murder. In his third Petition for Writ of Habeas Corpus, Crago asserts that the state appellate court violated his Fifth and Fourteenth Amendment due process and equal protection rights by (allegedly) illegally amending his sentence. Dkt. 1 at 5, 16–21. He also asserts a violation of his right to effective assistance of counsel based on trial counsel's decision to assert a justification defense and his having advised Crago "of an incorrect legal rule as it applied to self-defense." *Id*. at 7, 22–27. The claims Crago raised in this unauthorized successive petition are time barred, procedurally barred without excuse, and/or not cognizable in federal habeas.[1]

---

[1] Respondents are filing an answer limited to affirmative defenses, as permitted by this Court's order. Dkt. 8 at 5. Should this Court reject these affirmative defenses, Respondents respectfully request permission to address the claims on their merits.

## MEMORANDUM AND POINTS OF AUTHORITY

## I.   STATEMENT OF TRANSCRIPTS AND RECORDS.

As required by Rule 5 of the Rules Governing 28 U.S.C. § 2254 cases, Respondents submit as exhibits: (1) the original sentencing order (Exh. A); (2) the transcript of Crago's August 21, 1995, sentencing hearing (Exh. B); (3) the Arizona Court of Appeals memorandum decision in Crago's direct appeal (Exh. C); (4) the state court decisions from Crago's fifth proceeding for post-conviction relief (PCR) pursuant to Rule 32 of the Arizona Rules of Criminal Procedure (Exhs. D and E); (5) the Ninth Circuit Court of Appeals order in *Crago v. Bock*, No. 13–73476, dated March 13, 2014 (Exh. F); (6) all relevant pleadings and orders from Crago's eighth PCR proceeding (Exhs. G through L); (7) all relevant pleadings and orders from Crago's ninth PCR proceeding (Exhs. M through W); (8) the transcript of the evidentiary hearing in Crago's ninth PCR proceeding, dated October 20, 2020 (Exh. X); and the transcript of Crago's last day of trial dated April 7, 1995 (Exh. Y).

Rule 5(c) also requires Respondents to "indicate what transcripts (of pretrial, trial, sentencing or post-conviction proceedings) are available, when they can be furnished, and what proceedings have been recorded but not transcribed." Respondents are only required to attach those parts of the transcript that they consider relevant. *Id.*  Respondents are in possession of the following transcripts:

- R.T. 10/24/94 (arraignment hearing)
- R.T. 10/31/94 (bond hearing)
- R.T. 11/28/94 (motion hearing)
- R.T. 1/3/95 (motion hearing)
- R.T. 1/9/95 (motion hearing)
- R.T. 1/17/95 (motion hearing)
- R.T. 2/6/95 (motion hearing)
- R.T. 3/13/95 (motion hearing)

- R.T. 3/31/95 (motion hearing)
- R.T. 4/3/95 (trial, day 1)
- R.T. 4/4/95 (trial, day 2)
- R.T. 4/5/95 (trial, day 3)
- R.T. 4/6/95 (trial, day 4)
- R.T. 5/15/95 (motion hearing)
- R.T. 6/19/95 (motion hearing)
- R.T. 7/20/95 (motion hearing)
- R.T. 8/18/95 (motion hearing)
- R.T. 11/14/95 (motion hearing)
- R.T. 1/8/96 (motion hearing)
- R.T. 2/12/96 (motion hearing)
- R.T. 4/14/00 (PCR evidentiary hearing)

These transcripts were not included because they lack relevance to the issues raised in Crago's habeas petition.

The following proceedings were recorded, but not transcribed:

- 11/14/94 (motion hearing)
- 10/15/96 (motion hearing)
- 11/18/96 (motion hearing)
- 9/9/20 (informal settlement conference)
- 10/13/20 (motion hearing)

## II.   FACTUAL AND PROCEDURAL BACKGROUND.

Under 28 U.S.C. § 2254(e)(1), "a determination of a factual issue made by a state court shall be presumed to be correct." That includes findings of fact by an appellate court. *Sumner v. Mata*, 449 U.S. 539, 546–47 (1981); *Runningeagle v. Ryan*, 686 F.3d 758, 763 n.1 (9th Cir. 2012). The Arizona Court of Appeals found the facts as follows:

> At approximately 5:00 a.m. on September 28, 1994, several people reported hearing gunshots in their neighborhood in Sierra

3

Vista.   S., a fifteen-year-old resident, was awakened by three gunshots, with a pause between the first shot and the last two shots. From his bedroom window, S. saw Crago, an acquaintance of S.'s mother, standing next to his Nissan 300ZX in the driveway. S. lay back down in his bed, but then got up and went into the living room, from where he saw Crago pick up the victim's body from the driveway. The victim was S.'s mother's boyfriend. After returning to his bedroom, S. heard the car drive away and then woke his mother to tell her what he had seen and heard.

Several other neighbors heard the gunshots and gave similar descriptions of the incident. The neighbors generally testified that they had heard three shots and had seen a man lying near a small hatchback vehicle in the driveway of S.'s home. One witness had observed a person "looking down at the ground [between the victim and the car] and picking things up, like he was searching for something." According to that witness, that person then picked up the victim, placed him in the passenger side of the car, got in the car himself, and drove away.

The victim's body was discovered four days later in the desert, partially covered with a piece of plywood. The autopsy showed that the victim had suffered three gunshot wounds, one that entered his leg from the front and the other two that entered his back. The only fatal wound was a gunshot in his upper back that severed his aorta. Crago was arrested in Texas the day after the murder. On October 5, after the victim's body had been found, two Sierra Vista police officers traveled to Texas to search Crago's vehicle and return him to Arizona. The police found a holster in his car and what appeared to be bloodstains on the front passenger seat. At trial, Crago admitted he had shot the victim, but claimed he had acted in self-defense.

. . . .

Two witnesses and Crago himself testified that there was a brief pause between the first gunshot and the last two shots. Crago testified that he shot the victim in the leg first and then twice in the back only after the victim had threatened Crago's life and begun to run toward the house, ostensibly to retrieve a rifle from the living room. Only the second or third shot caused the victim's death. Based on that scenario, Crago had sufficient time to reflect on his actions and, thus, to commit premeditated murder. The state also presented evidence, including Crago's own testimony, that he had attempted to dispose of the body after the shooting and then immediately fled the jurisdiction. A defendant's attempt to dispose of a murder victim's body may be considered as evidence of premeditation. *State v. Sellers*, 106 Ariz. 315, 475 P.2d 722 (1970). . . .

In addition, two Cochise County detention officers testified that they had heard Crago tell another inmate at the county jail in mid-October 1994 "how he blew this guy away" and "motioning that how he had a gun and he killed someone." Crago argues that that testimony related only to his "identification as the perpetrator, but not to his intent before the offense." Like the evidence of his attempt to dispose of the victim's body, however, this evidence related to the

4

circumstances surrounding the killing and suggested that it was not self-defense, as Crago claimed.

Exh. C at ¶¶ 2–5, ¶¶ 8–10.  The state trial court sentenced Crago to life in prison with the possibility of release after 25 years.  Exhs. A at 3, B at 28.  The sentencing order also required Crago "to do mandatory community supervision" pursuant to former A.R.S. § 13–603(1), "one day for every day sentenced to, for a total of 3 years, 7 months."  Exhs. A at 3, B at 29.

The procedural history of Crago's direct appeal and his first, second, and third PCR proceedings is set forth in Respondents' answer to his first petition for writ of habeas corpus.  *Crago v. Schriro*, CIV 05–772–TUC–FRZ, dkt. 11 at 7–12. The procedural history of Crago's first federal habeas corpus proceeding and his fourth, fifth, sixth, and seventh PCR proceedings is set forth in Respondents' answer to his second-in-time petition for writ of habeas corpus.  *Crago v. Ryan*, CIV 14–2007–TUC–FRZ, dkt. 30 at 5–12.

### A.   *Second-in-time federal habeas corpus proceeding.*

Crago filed a second petition on March 12, 2012, alleging that the state court orders in his fifth PCR proceeding changed his sentence in 2011.[2]  *Crago v. Ryan*, CIV 12–0176–TUC–FRZ, dkt. 1.  This Court dismissed Crago's petition without prejudice as a "second or successive" petition that required authorization from the Ninth Circuit Court of Appeals.  *Id.*, dkt. 5.  Crago then sought authorization for a second or successive petition from the Ninth Circuit, which found that "the 2011 state court decisions [in Crago's fifth PCR proceeding] effectively amended" his sentence and obviated the need for authorization to file a second-in-time habeas petition.  Exh. F (referring to exhs. D and E).

---

[2] In response to Crago's argument in his fifth PCR that the term of community supervision required the conclusion that he had been sentenced to a determinate 25-year term, *Crago v. Ryan*, CIV 14–2007–TUC–FRZ, dkt. 30, exh. O, the state courts previously had found that the imposition of community supervision was contrary to law and inferred it to be a nullity.  Exhs. D, E at ¶¶ 9–11.

1   Crago subsequently filed his second-in-time petition for writ of habeas
2   corpus on April 7, 2014.  *Crago v. Ryan*, CIV 14–2007–TUC–FRZ, dkt. 1.  In his
3   July 31, 2015, amended petition, Crago asserted violations of his First, Fifth, and
4   Fourteenth Amendment rights based on the state trial court's misinforming him of
5   the mandatory minimum sentence he faced if he were convicted for first-degree
6   murder, and based on Arizona's "vague, misleading, and incomplete in structure"
7   truth-in-sentencing statute "as it applies to first-degree murder mandatory
8   minimum sentences."  *Id*., dkt. 25.  He also argued that the state violated his due
9   process rights by failing to disclose allegedly favorable DNA evidence in violation
10  of *Brady v. Maryland*, 373 U.S. 83 (1963).  *Id*.

11      This Court adopted the Magistrate Judge's Report and Recommendation that
12  Crago's petition be dismissed with prejudice because his sentencing claims were
13  procedurally defaulted without excuse and his *Brady* claim lacked merit.  *Id*., dkt.
14  47, 84.  This Court granted a certificate of appealability as to the *Brady* claim.  *Id*.,
15  dkt. 84.  The Ninth Circuit affirmed this Court's judgment.  *Id*., dkt. 91.

16      **B.     Eighth PCR proceeding.**

17      On November 30, 2018, a few days after the Ninth Circuit's mandate, *id*.,
18  Crago filed an eighth PCR notice.  Exh. G  In his simultaneously filed PCR
19  petition, Crago asserted a claim of newly discovered DNA evidence and argued the
20  prosecution's alleged failure to disclose that evidence was unconstitutional and
21  constituted misconduct.  Exh. H.  The PCR court concluded that Crago's alleged
22  "'newly discovered evidence' [was] not newly discovered" because it had been the
23  subject of Crago's seventh PCR petition and also had been argued in the trial court
24  in 1998.  Exh. I at 2–3.  Accordingly, the PCR court concluded that the claims
25  were precluded under Rule 32.2, and dismissed the petition.  *Id*.

26      Crago reasserted these claims in his petition for review to the Arizona Court
27  of Appeals and added a claim of ineffective assistance of trial counsel.  Exh. J.
28  The Arizona Court of Appeals concluded that Rule 32.2 precluded his claims of

newly-discovered evidence and prosecutorial misconduct.   Exh. K at ¶ 7.   The appellate court further stated that it does not address claims raised for the first time on review.   *Id*. at ¶ 8, citing Ariz. R. Crim. P. 32.16(c)(2)(B).   Crago did not seek review in the Arizona Supreme Court.   Exh. L.

### C.   Ninth PCR proceeding.

Crago filed a ninth PCR notice on November 12, 2019.   Exh. M.   In an attached memorandum, he claimed that he was being held after the expiration of his sentence based on the argument, recycled from his fifth PCR petition, that the trial court had sentenced him to a determinate 25-year sentence.   Exh. M at 3a–3d. Crago also asserted numerous claims of ineffective assistance of trial counsel and argued that pursuant to *Martinez v. Ryan*, 566 U.S. 1 (2012), the claims were not precluded because first PCR counsel had been ineffective.   *Id*. at 3d–3e.   In his December 23, 2019, PCR petition, Crago reasserted those arguments and added that *Martinez* was a "significant change in the law."   Exh. N at 1–3, 4–12 (quote on 4).   Crago filed a supplement to his petition, asserting that under *Chaparro v. Shinn*, 459 P.3d 50 (Ariz. 2020), another significant change in the law, the state courts lacked jurisdiction to correct his "illegally lenient sentence" and their 2011 rulings were "void."   Exh. O at 3–4.   Appointed counsel filed a memorandum expanding that argument.   Exh. P.

An employee from the Arizona Department of Corrections, Rehabilitation, and Reentry's Time Computation Unit and Crago testified during an evidentiary hearing.   Exhs. Q, X at 16–42, 43–53.   The state PCR court agreed with Crago that *Chaparro* was a significant change in the law that entitled him to relief on to his sentencing claim and ordered he be released on community supervision.   Exh. R at 4–6.   The PCR court further concluded that Rule 32.2(a) precluded Crago's IAC claims.   *Id*. at 6–7.

The State filed a petition for review in the Arizona Court of Appeals challenging the state PCR court's finding that *Chaparro* was a significant change

1  in the law.  Exh. S.  Crago opposed that petition, but did not file a cross-petition to

2  challenge the PCR court's conclusion that his IAC claims were precluded.  Exhs.

3  T, U at ¶ 5 n.1.  The Arizona Court of Appeals granted review and granted relief,

4  concluding that *Chaparro* was not a significant change in the law and that the PCR

5  court erred in concluding the issue was not precluded. Exh. U at ¶¶ 1, 17–22.  The

6  Arizona Supreme Court denied Crago's petition for review without comment.

7  Exhs. V, W.

## III.   THIS COURT LACKS JURISDICTION OVER CRAGO'S UNAUTHORIZED SUCCESSIVE PETITION.

Crago failed to request authorization from the Ninth Circuit before filing this

successive petition because he (mistakenly) believes that the state courts amended

his sentence. Dkt. 1 at 13.  Under 28 U.S.C. § 2244(b)(2):

> A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless—
>
> (A)   the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (B)(i)  the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and
>
>     (ii)  the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

Crago does not assert a new rule of constitutional law or a new factual

predicate for his claims, much less one that would have prevented a reasonable

factfinder from finding him guilty.   Instead, he argues that permission is

unnecessary because the state courts amended his sentence, citing *Magwood v.*

*Patterson*, 561 U.S. 320 (2010), and *Wentzell v. Neven*, 674 F.3d 1124 (9th Cir.

2012). Dkt. 1 at 13.  He is incorrect.

The United States Supreme Court held that the bar created by § 2254(b) applies only to a second or successive application challenging the same state court judgment, but not to a new judgment or sentencing. *Magwood*, 561 U.S. at 331–33. In *Wentzell*, 674 F.3d at 1126–27, the Ninth Circuit applied *Magwood* to a habeas petition challenging an amended judgment entered by the state court, and concluded that the defendant was not subject to the bar for filing a second or successive petition. Contrary to Crago's assertion, the state courts have not amended his sentence since 2011.

In Crago's ninth PCR proceeding, the PCR court applied *Chaparro* to Crago's 1995 sentence, found him eligible for release after 25 years because "his illegally lenient sentence is final under Arizona law" because the State had not appealed, and ordered that he be released on community supervision. Exh. R at 5. As explained above, however, the Arizona Court of Appeals reverse, finding Crago's claim precluded, and quoted from its 2011 decision in his fifth PCR proceeding, "Crago's sentence 'expires at the end of his life, an indeterminate period, not in twenty-five years.'" Exh. U at ¶ 21, quoting Exh. E at ¶ 8.[3]

Because Crago's sentence has not changed since 2011, his current petition challenges the same sentence that was the subject of his second-in-time habeas petition. *See Crago v. Ryan*, CIV 14–2007–TUC–FRZ, dkt. 25. Indeed, this Court found Crago's sentencing claim procedurally defaulted at that time. *Id*., dkt. 47 at 1, 15, and 84 at 4–5. This Court lack jurisdiction over this successive petition because it is unauthorized under 28 U.S.C. § 2244(b)(2). Accordingly, it should be dismissed with prejudice. *Magwood*, 561 U.S. at 331–33.

---

[3] Despite Crago's repeated assertions that he was sentenced to a determinate 25-year sentence, dkt. 1 at 17, 20–22, the Arizona Court of Appeals rejected that argument, stating that Crago's "original sentence expires at the end of his life, an indeterminate period, not in twenty-five years." Exh. E at ¶ 8. The court further stated that "[t]he imposition of community supervision had no bearing on Crago's life sentence or his eligibility to have that sentence commuted." *Id*. at ¶ 11.

**IV.   CRAGO'S PETITION IS UNTIMELY UNDER AEDPA.**

Crago's petition for Writ of Habeas Corpus is untimely, and neither statutory nor equitable tolling renders his petition timely, which precludes relief under the Anti-terrorism and Effective Death Penalty Act (AEDPA).

**A.   *Statutory tolling.***

As applicable here, AEDPA requires that a state prisoner file his federal habeas petition within one year from the "date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review," 28 U.S.C. § 2244(d)(1)(A), with time tolled during the pendency of a properly filed application for post-conviction relief, 28 U.S.C. § 2244(d)(2). "[T]he period of 'direct review' in 28 U.S.C. § 2244(d)(1)(A) includes the [90–day] period within which a petitioner can file a petition for a writ of certiorari from the United States Supreme Court, whether or not the petitioner actually files such a petition." *Bowen v. Roe*, 188 F.3d 1157, 1158–59 (9th Cir. 1999); *see also Jimenez v. Quarterman*, 555 U.S. 113–21 (2009); *Griffith v. Kentucky*, 479 U.S. 314, 321 n.6 (1987).

A state post-conviction "application is 'filed' … when it is delivered to, and accepted by, the appropriate court officer for placement into the official record … . And an application is 'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filing" in the appropriate state court. *Artuz v. Bennett*, 531 U.S. 4, 8 (2000) (citations omitted).  In Arizona, a timely PCR notice filed pursuant to Rule 32.4 tolls the statute of limitations. *Isley v. Arizona Dept. of Corrections*, 383 F.3d 1054, 1055–56 (9th Cir. 2004).

Crago claims that this petition is timely because the state courts amended his judgment of conviction on October 29, 2020, and "again" on March 25, 2021.  Dkt. 1 at 13.  As explained above, the state courts did not amend Crago's sentence. Thus, the most recent "change" to Crago's sentence occurred when the Arizona Court of Appeals issued its ruling in Crago's fifth PCR proceeding on September 9,

1  2011.  Exh. E.  The Arizona Supreme Court denied review of that ruling on
2  February 23, 2012, and the statute of limitations began to run on the following day.
3  *Crago v. Ryan*, CIV 14–2007–TUC–FRZ, dkt. 30–5 at 11.  Crago filed his sixth
4  PCR notice on July 16, 2012, tolling the statute of limitations after it had run for
5  143 days.  *Id.*, dkt. 30–5 at 18.  He filed his seventh PCR notice before the
6  proceedings in his sixth PCR had concluded.  *Id.*, dkt. 30–6 at 48, dkt. 30–7 at 2.
7  Crago's seventh PCR proceeding ended when the Arizona Supreme Court denied
8  his petition for review on July 21, 2015.  *Id.*, dkt. 30–13 at 4.[4]

9  The statute of limitations began to run on July 22, 2015, and expired 222
10  days later on February 29, 2016.  Neither Crago's eighth nor ninth PCR proceeding
11  has any impact on this analysis because even a properly filed PCR petition cannot
12  restart the statute of limitations after it has expired.  *Laws v. Lamarque*, 351 F.3d
13  919, 922 (9th Cir. 2003); *Ferguson v. Palmateer*, 321 F.3d 820, 823 (9th Cir. 2003).

14  Crago's current petition, presented to prison officials for mailing on July 22,
15  2022, is untimely by more than 5 years and should be dismissed with prejudice.
16  *See Pace v. DeGuglielmo*, 544 U.S. 408, 419 (2005) (late-filed federal habeas
17  petition barred by AEDPA statute of limitations).

18  **B.**   ***Equitable tolling.***

19  To be entitled to equitable tolling, a petitioner must show that (1) "he has
20  been pursuing his rights diligently" and (2) that "some extraordinary circumstance
21  stood in his way and prevented timely filing."  *Holland v. Florida*, 560 U.S. 631,
22  649 (2010) (citation and internal quotation marks omitted); *see also Frye v.*

23  _____

24  [4] Crago filed a timely second petition based on the "new" judgment changing his
25  sentence on March 12, 2012.  *Crago v. Ryan*, CIV 12–0176–TUC–FRZ, dkt. 1.
   This Court dismissed that petition as successive, *id.*, dkt. 5, and the Ninth Circuit
   found its permission unnecessary on March 13, 2014.  Exh. F.  Crago filed his
26 second-in-time habeas petition based on that "new" judgment on April 7, 2014,
   and was denied habeas relief.  *Crago v. Ryan*, CIV 14–2007–TUC–FRZ, dkt. 1, 25,
27 47, 84.  Neither of these habeas proceedings tolled the statute of limitations.  *See*
   *Duncan v. Walker*, 533 U.S. 167, 181–82 (2001) (federal proceedings do not toll
28 the statute).

11

1    *Hickman*, 273 F.3d 1144, 1146 (9th Cir. 2001) (no equitable tolling absent

2    "extraordinary circumstances beyond the prisoner's control that made it impossible

3    to file a petition on time") (citation and internal quotation marks omitted).  With

4    respect to the diligence prong, *Holland* requires only "reasonable diligence," not

5    "maximum feasible diligence."   560 U.S. at 653 (citations omitted).   "[T]he

6    petitioner bears the burden of showing that equitable tolling is appropriate."

7    *Rasberry v. Garcia*, 448 F.3d 1150, 1153 (9th Cir. 2006).  It is well established that

8    "the threshold necessary to trigger equitable tolling [under AEDPA] is very high,

9    lest the exceptions swallow the rule."  *Miranda v. Castro*, 292 F.3d 1063, 1066 (9th

10   Cir. 2002) (citation and interior quotation marks omitted).

11   Crago does not suggest that equitable tolling applies to his claims.  Dkt. 1 at

12   13.  Crago's tardiness cannot be excused by statutory or equitable tolling.  Thus,

13   this Court should dismiss his habeas petition as barred by the statute of limitations.

14   **V.   EXHAUSTION/PROCEDURAL DEFAULT.**

15   Crago's claims are procedurally defaulted without excuse.  Furthermore, his

16   Ground I claim is not cognizable in federal habeas.

17       **A.   *The exhaustion requirement.***

18   Generally, a federal court may only consider a petitioner's application for a

19   writ of habeas corpus if "the applicant has exhausted the remedies available in the

20   courts of the State."   28 U.S.C. § 2254(b)(1)(A); *see Coleman v. Thompson*, 501

21   U.S. 722, 731 (1991); *Wooten v. Kirkland*, 540 F.3d 1019, 1023 (9th Cir. 2008).

22   Proper exhaustion requires a petitioner to fairly present his federal claims to the

23   trial level and to "invok[e] one complete round of the State's established appellate

24   review process," presenting the same federal claim to each court in a procedurally

25   appropriate manner.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *see also*

26   *Wooten,* 540 F.3d at 1025 ("The rule of exhaustion requires that a habeas petitioner

27   'fairly present' his federal claims to each appropriate state court.").  In Arizona, a

28   prisoner does not exhaust a claim for federal review in a non-capital case unless he

1   has presented it to the Arizona Court of Appeals.  *Castillo v. McFadden*, 399 F.3d

2   993, 998 n.3 (9th Cir. 2005); *Swoopes v. Sublett*, 196 F.3d 1008, 1010–11 (9th Cir.

3   1999).

4       A claim is "fairly present[ed]" only when a petitioner "clearly state[s] the

5   federal basis and federal nature of the claim, along with relevant facts."  *Cooper v.*

6   *Neven*, 641 F.3d 322, 327 (9th Cir. 2011); *see also Duncan v. Henry*, 513 U.S. 364,

7   365–66 (1995) ("If state courts are to be given the opportunity to correct alleged

8   violations of prisoners' federal rights, they must surely be alerted to the fact that

9   the prisoners are asserting claims under the United States Constitution.").  It is not

10  enough, for example, that "all the facts necessary to support the federal claim were

11  before the state courts … or that a somewhat similar state-law claim was made."

12  *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (internal citation omitted).  "[T]he

13  petitioner must make the federal basis of the claim *explicit* either by citing federal

14  law or the decisions of federal courts, even if the federal basis is 'self-evident,' …

15  or the underlying claim would be decided under state law on the same

16  considerations that would control resolution of the claim on federal grounds."

17  *Lyons v. Crawford*, 232 F.3d 666, 668 (9th Cir. 2000) (emphasis added; internal

18  citations omitted), *modified by* 247 F.3d 904 (9th Cir. 2000); *see also Rose v.*

19  *Palmateer*, 395 F.3d 1108, 1111 (9th Cir. 2005) ("[P]etitioners must plead their

20  claims with considerable specificity before the state courts in order to satisfy the

21  exhaustion requirement.").

22       **B.    *Procedural default principles.***

23       Whether or not a petitioner has "fairly present[ed]" a claim to the state

24  courts, the doctrine of procedural default may bar habeas review of a prisoner's

25  federal claims.  *See generally Coleman*, 501 U.S. at 729–32; *Murray v. Carrier*,

26  477 U.S. 478, 485–92 (1986).  There are two forms of procedural default.

27       First, a claim is procedurally defaulted when a petitioner attempted to raise it

28  in state court, but the state court expressly applied a procedural bar to avoid

13

considering its merits. *See Ylst v. Nunnemaker*, 501 U.S. 797, 802–05 (1991); *see also Insyxiengmay v. Morgan*, 403 F.3d 657, 665 (9th Cir. 2005) (procedural default "applies to bar federal habeas review when the state court has declined to address the petitioner's federal claims because he failed to meet state procedural requirements") (internal quotation marks omitted).   In determining whether the state courts have imposed a procedural bar, this Court reviews the last reasoned decision of the state courts, *Bailey v. Roe*, 339 F.3d 1107, 1112–13 (9th Cir. 2003), and a subsequent decision denying review without comment does not vitiate the procedural default.  *See Ylst*, 501 U.S. at 802 (when the last-reasoned state court decision imposes a procedural default on a claim, the habeas court presumes that a subsequent state court decision rejecting that claim did not consider its merits).

Second, a claim is deemed technically exhausted, but procedurally defaulted, when a petitioner has not raised it in state court and a return to state court to exhaust it would be futile in light of state procedural rules.  *See Teague*, 489 U.S. at 297–99; *see also Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991) ("[I]f the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred … there is a procedural default for purposes of federal habeas.").   In Arizona, claims not previously presented to the state courts via either direct appeal or collateral review are barred from federal review, because an attempt to return to state court to present them is futile unless the claims fit in a narrow category of claims for which a successive petition is permitted.  *See* Ariz. R. Crim. P. 32.1(b)–(h), 32.2(a), (precluding claims not raised on appeal or in prior petitions for post-conviction relief, except for narrow exceptions); and 32.4 (time bar). Rule 32 presents a procedural bar for a claim that could have been raised in the prior proceedings. *See Stewart v. Smith*, 536 U.S. 856, 860 (2002) (state court determinations under Rule 32.2(a) are independent of federal law); *Ortiz v. Stewart*, 149 F.3d 923, 931–

1   32 (9th Cir. 1998) (rejecting argument that Arizona courts have not "strictly or
2   regularly followed" Rule 32.2(a)).  A state post-conviction action is futile where it
3   is time-barred.  *Beaty v. Stewart*, 303 F.3d 975, 987 (9th Cir. 2002); *Moreno v.*
4   *Gonzalez*, 116 F.3d 409, 410 (9th Cir. 1997) (recognizing untimeliness under Ariz.
5   R. Crim. P. 32.4(b) as a basis for dismissal of an Arizona petition for post-
6   conviction relief, distinct from preclusion under Rule 32.2(a)).

7       This Court may review a procedurally defaulted claim only if the prisoner
8   alleges and proves both "cause" for the procedural default and "actual prejudice"
9   arising from the alleged constitutional error, *Manning v. Foster*, 224 F.3d 1129,
10  1132–33 (9th Cir. 2000), or if the petitioner establishes that a fundamental
11  "miscarriage of justice" has occurred.  *Sawyer v. Whitley*, 505 U.S. 333, 339
12  (1992).    A petitioner establishes "cause" only by demonstrating that "some
13  objective factor external to the defense impeded counsel's efforts to comply with
14  the State's procedural rule." *Coleman*, 501 U.S. at 753.  "Prejudice" is actual harm
15  resulting from the alleged constitutional error.  *Carrier*, 477 U.S. at 494 (a habeas
16  petitioner does not demonstrate prejudice merely by pointing to a *possibility* of
17  prejudice; rather, the habeas petitioner must demonstrate the error "worked to his
18  *actual* and substantial disadvantage," infecting the entire proceeding with
19  constitutional error) (emphasis in original); *Stokely v. Ryan*, 705 F.3d 401, 404 (9th
20  Cir. 2012) (to demonstrate prejudice excusing procedural default, habeas petitioner
21  was required to show that the error "had a substantial and injurious impact upon
22  the verdict").    A petitioner proves that a fundamental "miscarriage of justice"
23  occurred only when the petitioner affirmatively demonstrates that it is more likely
24  than not that no reasonable jury would have found him guilty of the offenses.  *See*
25  *Schlup v. Delo*, 513 U.S. 298, 327 (1995).
26  ////
27  ////
28  ////

**C.    *Procedural status of Crago's claims*.**

**Ground I.   Due process and equal protection violation.**

In his Petition for Writ of Habeas Corpus, Crago argues that the Arizona Court of Appeals violated his due process and equal protection rights under the Fifth and Fourteenth Amendments when it "made an untimely and thus illegal amendment to [his] illegally lenient sentence." Dkt. 1 at 18.   Contrary to Crago's assertion, *id*. at 6, he did not raise this argument in his response to the State's petition for review to the Arizona Court of Appeals.  Exh. T.  Moreover, he did not assert either a due process or an equal protection violation in his petition for review to the Arizona Supreme Court.  Exhs. U, V.  Thus, the state courts have not had any opportunity to rule on this claim, and any attempt to return to state court would be futile in view of Rules 32.2 and 32.4(b).  *See Henry v. Ryan*, 720 F.3d 1073, 1082–83 (9th Cir. 2013) (due process claims can be procedurally defaulted); *Tong Xiong v. Felker*, 681 F.3d 1067, 1075 (9th Cir. 2012) (same).  Accordingly, this claim is technically exhausted but procedurally defaulted.  And the Arizona Court of Appeals found the underlying sentencing claim precluded by Rule 32.2 for the second time in Crago's ninth PCR proceeding.  Exhs. E at ¶ 7, U at ¶¶ 13, 21. Therefore, the claim is also procedurally defaulted by the state court's application of an express procedural bar.  *Ylst*, 501 U.S. at 802–05.

Crago has shown neither cause and prejudice, nor actual innocence, to excuse his failure to properly exhaust this claim in the state courts.  Therefore, this Court cannot address it.  *Carrier*, 477 U.S. at 488.

Finally, Crago challenges the Arizona Court of Appeals' application of *Chaparro* and *Dawson* to his sentence that was imposed pursuant to Arizona sentencing statutes.   Dkt. 1 at 16–21.   Challenges to the Arizona courts' applications of state law are not cognizable claims in federal habeas.  *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (*per curiam*); *see also Pulley v. Harris*, 465 U.S. 37, 41 (1984) ("A federal court may not issue the writ on the

1    basis of a perceived error of state law."). Crago cannot convert his state law claim

2    into a federal claim simply by labeling it a violation of due process or equal

3    protection. *Little v. Crawford*, 449 F.3d 1075, 1081–83 n.6 (9th Cir. 2006).

4    Crago's claim lacks a federal basis and is not cognizable in federal habeas. Federal

5    habeas corpus is available only on behalf of a person in custody in violation of the

6    Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); *Wilson*

7    *v. Corcoran*, 562 U.S. 1, 5 (2010) (per curiam); *Estelle v. McGuire*, 502 U.S. 62,

8    67–68 (1991); *Engle v. Isaac*, 456 U.S. 107, 119 (1982). And

9            Similarly, Crago's implied claim that he is being held beyond the expiration

10   of his 25-year determinate sentence is a state law issue involving the application of

11   Arizona sentencing statutes. Dkt. 1 at 17, 20–22; Exh. U at ¶ 2. The Arizona

12   Court of Appeals has repeatedly stated that "Crago's sentence [imposed pursuant

13   to Arizona sentencing statutes] 'expires at the end of his life, an indeterminate

14   period, not in twenty-five years.'" Exh. U at ¶ 21 (quoting exh. E at ¶ 8). This

15   implied claim is not cognizable in federal habeas corpus. *See Bradshaw*, 546 U.S.

16   at 76; *Estelle*, 502 at U.S. at 67–68 *Pulley*, 465 U.S. at 41.

17           **Ground II:  Ineffective assistance of counsel.**

18           Crago asserts a violation of his right to effective assistance of counsel based

19   on trial counsel's decision to assert a justification defense and his having advised

20   Crago "of an incorrect legal rule as it applied to self-defense." Dkt. 1 at 7, 22–27.

21   He admits that that he raised the claim in his ninth PCR proceeding and that the

22   state courts found it precluded under Rule 32.2, rendering the claim procedurally

23   defaulted. *Id*. at 24–25; Exhs. R at 6–7, U at ¶ 5 n.1. Crago argues that his

24   procedural default is excused under *Martinez* because first PCR counsel was

25   ineffective in failing to present the claim. Dkt. 1 at 24, 27.

26           Generally, the ineffective assistance of state post-conviction counsel does

27   not provide cause to excuse the procedural default of a claim. *Coleman*, 501 U.S.

28   at 752. But in *Martinez*, the Supreme Court held that the ineffective assistance of

17

PCR counsel may provide cause to excuse the procedural default of a claim of ineffective assistance of trial counsel in very limited circumstances:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was  no counsel or counsel in that proceeding was ineffective.

566 U.S. at 17.

"Thus, under *Martinez*, a petitioner may establish cause for procedural default of a trial IAC claim . . . by demonstrating two things: (1) 'counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of *Strickland v. Washington*, 466 U.S. 668, … (1984)' and (2) 'the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit.'"  *Cook v. Ryan*, 688 F.3d 598, 607 (9th Cir. 2012) (quoting *Martinez*, 566 U.S. at 14).  In *Clabourne v. Ryan*, 745 F.3d 362 (9th Cir. 2014), the Ninth Circuit provided guidelines for applying *Martinez*:

> To demonstrate cause and prejudice sufficient to excuse the procedural default, therefore, *Martinez* and *Detrich*[*v. Ryan*, 740 F.3d 1237 (9th Cir. 2013),] require that [a petitioner] make two showings. First, to establish "cause," he must establish that his counsel in the state postconviction proceeding was ineffective under the standards of *Strickland.  Strickland*, in turn, requires him to establish that both (a) post-conviction counsel's performance was deficient, and (b) there was a reasonable probability that, absent the deficient performance, the result of the post-conviction proceedings would have been different.  Second, to establish "prejudice," he must establish that his underlying   ineffective-assistance-of-trial-counsel   claim   is   a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit.

745 F.3d at 377 (internal quotation marks and citation omitted).

To succeed on an IAC claim under *Strickland*, a defendant must show that counsel's performance was deficient under prevailing professional norms and that the deficient performance prejudiced the defense so as to render the verdict unreliable.  466 U.S. at 687.  To show prejudice, "[t]he defendant must show that

there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689.  "Failure to satisfy either prong of the *Strickland* test obviates the need to consider the other." *Rios v. Rocha*, 299 F.3d 796, 805 (9th Cir. 2002).  "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

Crago complains that, in ruling on his first PCR following the evidentiary hearing, the state PCR judge (who also presided at trial) stated that he must have given the self-defense instruction based on the fight in Crago's car, rather than on Crago's seeking to prevent the victim from going inside to get a gun because the car's ignition did not properly function.  Dkt. 1 at 23.  Crago also points out that the PCR judge explained that he did not consider the latter because it was an incorrect statement of the law.  *Id* at 24, citing dkt. 1–1 at 75.  He does not, however, suggest an alternative defense.  Indeed, this is not the first time that Crago has challenged counsel's decision to pursue a justification defense.  This Court previously rejected his argument that an alibi defense would have prevailed. *Crago v. Ryan*, CIV 14–2007–TUC–FRZ, dkt. 47 at 12–14, 84.

The trial court's self-defense instructions did not communicate to the jury whether Crago's self-defense claim was based on the car fight or on Crago's attempt to stop the victim from retrieving a weapon.  Exh. Y at 47–48.  No separate offense was associated with the car fight, and the medical examiner testified that the first shot was not fatal.  Exh. C at ¶ 4.  The instructions could not have applied to the car fight.  It appears that Crago received the benefit of self-defense instructions to which he *may* not have been entitled.  But the jury was unaware of any purported mistake in the instructions.  The jury rejected Crago's self-defense claim because of the facts of the case, not because the instructions *may* have been

1   an incorrect statement of the law.   That defense counsel selected a justification

2   defense that was consistent with the facts, but proved to be unsuccessful does not

3   necessarily mean "that counsel's representation fell below an objective standard of

4   reasonableness." *Strickland*, 466 U.S. at 687–688.   "[S]trategic choices made after

5   thorough investigation of law and facts relevant to plausible options are virtually

6   unchallengeable." *Id*. at 690.   Furthermore, Crago does not suggest that counsel

7   unreasonably rejected other defenses or claim that his testimony was untruthful.

8   Dkt. 1 at 22–27.   Indeed, his testimony that he shot the victim was corroborated by

9   the testimony of two Cochise County detention officers who stated "that they heard

10  Crago tell another inmate at the county jail in mid-October 1994 'how he blew this

11  guy away' and 'motioning that how he had a gun and he killed someone.'"   Exh. C

12  at ¶ 10.

13          Crago's IAC claim simply is not substantial under *Martinez*.   Trial counsel

14  was not deficient in selecting a self-defense theory, nor was PCR counsel deficient

15  in failing to raise an IAC claim on this basis.   *See Martinez (Ernesto) v. Ryan*, 926

16  F.3d 1215, 1226 (9th Cir. 2019) (where substantive claim lacked merit, neither trial

17  counsel nor appellate counsel performed deficiently in failing to raise it); *see also*

18  *Boag v. Raines*, 769 F.2d 1341, 1344 (9th Cir. 1985) ("Failure to raise a meritless

19  argument does not constitute ineffective assistance.").   *Martinez* does not excuse

20  Crago's procedural default of his IAC claim.

21  ////

22  ////

23  ////

24  ////

25  ////

26  ////

27  ////

28  ////

**VI.   CONCLUSION**

For these reasons, Respondents respectfully request that this Court deny the Petition for Writ of Habeas Corpus and dismiss it with prejudice.   Respondents also request that no certificate of appealability be issued because the dismissal of the petition is justified by a plain procedural bar, reasonable jurists would not find the ruling debatable, and Crago has not made a substantial showing of the denial of a constitutional right.   *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Respectfully submitted this 6th day of December, 2022.

Mark Brnovich
Attorney General

J.D. Nielsen
Habeas Unit Chief

s/ Kathryn A. Damstra
Assistant Attorney General
Attorneys for Respondents

1

**CERTIFICATE OF SERVICE**

2

      I hereby certify that on December 6, 2022, I electronically transmitted the attached document to the Clerk's Office using the ECF System for filing and served the attached document by mail on the following, who is not a registered participant of the ECF System:

3

4

Earl Felton Crago, #115357
ASPC Lewis – Rast Unit
P.O. Box 70
Buckeye, AZ 85326

5

6

7

Petitioner, Pro Se

8

9

10

s/ Y. Garcia

11

SSK0FBTB0DHENG

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28